KING et al. v. HARDIN LUMBER CO.
(No. 594.)

(Court of Civil Appeals of Texas. El Paso. May 25, 1916. Rehearing Denied June 22, 1916.)

1. ASSIGNMENTS ⟨⟩12 — FUTURE EARNINGS UNDER EXISTING CONTRACTS.

A building contractor may assign an indebtedness which is to accrue in his favor under his contract, since the fund has a potential existence.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. § 20; Dec. Dig. ⟨⟩12.]

2. ASSIGNMENTS ⟨⟩58 — EQUITABLE ASSIGNMENTS—ORDER ON PARTICULAR FUND.

An order by a building contractor to the owners to pay a materialman a certain sum operates without acceptance as an equitable assignment of the fund to accrue in favor of the contractor.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 121–123; Dec. Dig. ⟨⟩58.]

3. ASSIGNMENTS ⟨⟩131—ACTIONS—PLEADING.

In actions by assignee to enforce payment of the fund assigned, the alleged invalidity of the assignment due to restriction in assignor's contract against assignment is defensive matter which defendant must plead and prove.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 220–226; Dec. Dig. ⟨⟩131.]

Appeal from Harris County Court; Clark C. Wren, Judge.

Action by the Hardin Lumber Company against I. H. King and others. From a judgment for plaintiff, defendants appeal. Affirmed.

A. B. Wilson and Cole & Cole, all of Houston, for appellants. Ross & Wood, of Houston, for appellee.

## Statement of Case.

HIGGINS, J. By contract dated June 13, 1914, I. H. King agreed with H. R. Byars, B. L. Vineyard, and John G. Logue, owners, to remodel a building. King was to furnish all material and labor, for which the owners were to pay him $6,925. This sum was payable to King as follows:

"Such an amount every Saturday morning during the progress of the work as is estimated by the architects to be the amount of the pay roll then owing by the contractor for said week and in addition thereto forty (40) per cent. of the amount of the plumbing contract, when said plumbing work has been roughed in, tested and approved, and forty (40) per cent. of the wiring contract, when said work has been roughed in, tested and approved, the balance of said contract price to be paid by the owners to the contractor within thirty (30) days after the work is completed, finished and accepted, save and except ten (10) per cent. of the contract price, which shall be retained by the owners until after the lapse of thirty (30) days from the time when said work has been finally completed and delivered to and accepted by the owners, but the owners shall have the right to refuse to pay over the balance of said contract price until satisfactory evidence has been furnished to them by the contractor of the payment of all claims on the part of laborers, mechanics, materialmen and subcontractors, and all claims of every kind which may be, or constitute a lien against said building or premises, it being the intention of the parties that the contractor shall deliver said building to the owners free from all claim and liens of any kind, and the owners reserve the right, in any event, to retain at least twenty-five (25) per cent. of the contract price until the final completion of said work and the acceptance thereof by them, and in the event, during the progress of the work, any claim of any kind shall be made against the owners on the part of laborers, materialmen, mechanics, or subcontractors, or any one else, the owners shall have the right to retain out of any payments then due or thereafter to become due the contractor, an amount sufficient to completely indemnify them against such claim or claims."

The remodeling was to be completed on or before August 20, 1913. If not so completed, King was to pay the owners as liquidated damages $5 per day for each day that the work should remain unfinished after said date. The contract provided that if King should fail to prosecute the work with promptness and diligence, the owners might terminate the employment of King and complete the work at his cost. King agreed to execute and deliver to the owners and did execute and deliver to them a bond in sum of $2,500 to guarantee performance of his contract.

The Hardin Lumber Company agreed to furnish King the materials for the performance of his contract. It also paid for King's account to a bonding company a premium of $69.25 for the bond which King gave the owners and a premium of $50 on casualty insurance taken out by King on the work, making a total of $119.25 of such premium paid by the Hardin Lumber Company for King's account.

On June 14, 1913, King executed and delivered to said company this instrument:

"Vineyard & Byers, City—Please pay Hardin Lumber Co. the sum of $1,169.25 (eleven hundred sixty-nine and 25/100 dollars), same being for material to be furnished to me amounting to $1,050.00 and cash furnished for bonds amounting to $119.25. Also please pay for all extra material I may use, and deduct said amount from my contract price with you. For value received I hereby assign the above amount to them. Accepted.    I. H. King."

On the same date it was presented by the company to Logue, who, it seems, was making the disbursements for himself, Vineyard & Byars to King. He refused to accept same, but stated he would see that appellee got its money. The value of material furnished by appellee to King for remodeling the building aggregated $1,164.75. King, it seems, delayed the completion of the contract and the owners terminated his employment and completed the same. The evidence does not disclose when they terminated his employment. There was a delay of 52 days in the completion of the contract and the owners charged $5 for each of said days as provided by the contract, totaling $260. This item of $260, together with the other amounts paid by the owners for material and labor to complete the building, aggregated $583.53 in excess of the contract price. In other words, they paid $278.53 for material and labor in excess of the contract price which, added to the item of $260, made $583.53 due the owners by King. The owners paid to the appellee the said sum of $1,164.75 to cover the material furnished by it to King and refused to pay the item of $119.25 covering bond premiums paid for King's account. This suit was brought by appellee to recover this item against King and the owners. The case was tried without a jury, and judgment rendered in favor of appellee. Findings of fact were not filed by the trial court, and in the absence thereof it is presumed that all issues of fact were resolved in favor of appellees. The owners prosecute this appeal.

## Opinion.

[1, 2] The indebtedness which was to accrue in King's favor under the contract between himself and the owners had a potential existence when the instrument in favor of appellee was given, and the fund having such potential existence, it was properly subject to equitable assignment. The instrument given to appellee by King constituted an equitable assignment of $1,050 of the fund applicable to the payment of materials to be furnished by appellee and a like assignment of $119.25

thereof applicable to the payment of the bond premium items paid by appellee for King's account.

The application by the owners of the money accruing to King under the contract between them is shown by the following statement:

Statement of I. H. King Contract for Remodeling of Faith Home under Contract with Vineyard, Byars & Logue.

October 11, 1913.

Contract price, $6,925.00.

| | | | |
|---|---|---|---:|
| June | 21, 1913 | | $ 110 25 |
| | 28, 1913 | | 85 80 |
| July | 3, 1913 | | 94 70 |
| | 12, 1913. | Modern Plumbing Company | 877 60 |
| | 12, 1913 | | 129 75 |
| | 19, 1913 | | 152 40 |
| | 19, 1913. | Modern Plumbing Company | 150 00 |
| | 26, 1913. | George Gardiner | 35 00 |
| | 26, 1913 | | 215 60 |
| | 30, 1913. | George Gardiner | 25 00 |
| Aug. | 2, 1913 | | 60 00 |
| | 2, 1913 | | 183 20 |
| | 9, 1913. | George Gardiner | 65 00 |
| | 9, 1913 | | 211 15 |
| | 16, 1913. | George Gardiner | 65 00 |
| | 16, 1913 | | 203 70 |
| | 23, 1913. | George Gardiner | 65 00 |
| | 23, 1913 | | 113 00 |
| | 30, 1913. | G. W. Miller | 122 50 |
| Sept. | 1, 1913. | George Gardiner | 65 00 |
| | 6, 1913. | George Gardiner | 90 00 |
| | 6, 1913. | G. W. Miller | 77 85 |
| | 13, 1913. | George Gardiner | 80 00 |
| | 13, 1913. | G. W. Miller | 77 30 |
| | 13, 1913. | E. Rudnick | 3 15 |
| | 20, 1913. | George Gardiner | 40 00 |
| | 20, 1913. | L. F. Campbell | 7 88 |
| | 20, 1913. | Mack Gibson | 1 20 |
| Oct. | 10, 1913. | John Lloyd and N. Scott | 12 00 |
| | 10, 1913. | J. Hedricks | 15 00 |
| | 11, 1913. | L. F. Campbell | 10 50 |

(Above accounts all paid to I. H. King in person, except where otherwise noted.)

| | |
|---|---:|
| Total | $3,444 53 |

Amount due Vineyard, Byars & Logue, account delay, 52 days at $5.00 per day ...... 260 00

| | |
|---|---:|
| Grand total | $3,704 53 |

Amount due I. H. King under contract.... $3,220 47

Claims against the job:

| | |
|---|---:|
| Hardin Lumber Company | $1,284 00 |
| Modern Plumbing Company | 1,531 40 |
| C. L. & Theo. Bering | 240 05 |
| Louis Seline | 110 00 |
| Hartwell Iron Works | 3 35 |
| Barthold & Casey | 63 60 |
| James-Bute Co | 33 53 |
| G. W. Miller | 55 00 |
| G. W. Gardiner | 329 12 |
| J. Hedricks | 194 25 |
| Max Gibson | 6 50 |
| C. L. Dwyer | 17 50 |
| John Burney | 1 50 |

| | |
|---|---:|
| Total | $3,878 25 |
| Excess of claims over balance due | $657 78 |

Logue made all payments, and he testified that he paid to the defendant King, upon the certificates of the architect according to the contract provisions, the weekly pay roll as he was required to do under his contract; otherwise the contract could not have been carried out. "We did not pay the defendant King any money except upon certificates issued by the architect as required by the contract, which I was compelled to do as the contract required us to do." He further testified that the amounts shown in the statement were all paid to King, except where it is otherwise indicated therein as having been paid to other parties. It therefore appears that $1,559.55 was paid to King direct subsequent to the execution of the assignment and notice thereof given to the owners. Under the authority of the decisions to which appellants refer, it may be assumed that these payments were rightfully made as necessary in order to enable King to complete his contract. It may be assumed that this right to make these payments to enable the completion of the contract was a right valuable to appellants and of which they could not be deprived by the assignment. But eliminating this amount of $1,559.55, it appears that up to October 11, 1913, the sum of $1,884.98 was paid to other parties out of the fund, and some time subsequent to that date $2,594.25 was paid to other parties having "claims against the job." The dates these later payments were made does not appear, nor does it appear whether the labor and material was furnished before or after the termination of King's employment under the contract. It is true Mr. Logue testified that the items aggregating these two sums were paid no parties who had furnished material and labor in remodeling the building. But this fact alone would not give the claims of such parties precedence over the assignment held by appellee. There is nothing in the record to show that the claims were secured by lien or had precedence otherwise. The mere fact that material and labor was furnished to King did not fix a lien in favor of such parties or right of precedence. In the condition of this record, the cases to which appellant cite us have no application, and we cannot say the court erred in holding them liable for the items for which appellee sued. Youngberg v. El Paso Brick Company, 155 S. W. 715.

[3] It is insisted that the assignment is invalid for want of consent thereto of the architect as required by a clause in the contract between King and the owners, which stipulates:

"The contractor shall not let, assign or transfer this contract, or any interest therein, without written consent of the architects."

The architects' want of consent was affirmative defensive matter, which it was incumbent upon appellants to plead and prove. Ginners, etc., v. Wiley & House, 147 S. W. 629, and cases there cited. It was pleaded, but no proof thereof offered.

In view of what has been said, it becomes unnecessary to pass upon the remaining assignment.

Affirmed.