### LEEPER–CURD LUMBER CO. et al. v. BARBUZZA et al. (No. 8993.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 12, 1919. Rehearing Denied Nov. 8, 1919.)

1. APPEAL AND ERROR ⬯1061(4)—HARMLESS ERROR IN PEREMPTORY INSTRUCTION.

If money was in fact used in the completion of a contract which one had obligated himself to perform, and which he must have performed in order to show himself entitled to any balance due in the amount of the money used, he cannot demand further payments from the other parties to the contract who so used the money, where they used more than the amount claimed by the contractor, and a peremptory charge against him on the point was harmless.

2. CONTRACTS ⬯232(1)—RIGHT TO COMPENSATION FOR EXTRAS.

A contractor claiming extras must show, not only that he performed the services, furnished material, and did work outside of and in addition to the specifications agreed upon, but that such additions and alterations necessitated an expense in excess of the contract price.

3. MECHANICS' LIENS ⬯114(2)—ORDER FROM CONTRACTOR FOR AMOUNT NOT OWED BY OWNER.

Where no installment of the price of the work was due the contractor for work done when a materialman or a mechanic gave notice to the owner's agents for the purpose of receiving such notice, the material man or mechanic secured no right against the owner or the property, through the giving of such notice, accompanied by presentation of an order for payment from the contractor, claimed to operate as an assignment.

4. MECHANICS' LIENS ⬯279—BURDEN TO ESTABLISH EXISTENCE AS WELL AS VERITY.

The burden was on claimants of liens as a materialman and as a mechanic to establish, not only the verity of their claims, but the existence of their liens under the contractor's order on funds in the hands of the owner or his agent.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Suit by W. C. Roundtree against the Leeper-Curd Lumber Company, wherein Thomas Barbuzza and others intervened. From the judgment, defendant lumber company and two others appeal. Affirmed.

Flournoy, Smith & Storer, Graves & Houtchens, and J. W. Stitt, all of Ft. Worth, for appellants.

Capps, Cantey, Hanger & Short and Hunter & Penry, all of Ft. Worth, and J. H. Synnott, of Dallas, for appellees.

BUCK, J. In May, 1913, L. L. Higby and wife owned a homestead at 915 Belknap street, Ft. Worth, Tex., which they would sell and Dr. W. C. Roundtree would buy if arrangements could be made to make certain additions and improvements, required by Dr. Roundtree for the use of the premises as a residence and sanitarium. These improvements consisted of a general overhauling of and addition to the existing building, the construction of a cook room and of a driveway. To this end, Higby made a contract May 5, 1913, with W. O. Hudgins, a contractor, to furnish the material and labor necessary to make the repairs and improvements, except the plumbing, for $3,150. This building contract was signed by Higby, Hudgins, and Dr. Roundtree, but not by Mrs. Higby. In the contract it was provided, first, that in the case of any disagreement between the parties appeal should be had to L. L. Higby and Dr. W. C. Roundtree, "who have been hereby mutually selected, and for which no fee is to be charged, whose decision shall be final and binding on all parties, each party paying one-half of the fee. It is further agreed that in case any difference of opinion shall arise between the said parties in relation to the said contract, the work to be or that has been performed under it, or in relation to the plans, drawings and specifications hereto annexed, the decision of George Mulkey shall be final and binding on all parties hereto." This contract was not put of record, and it is not clear as to what effect should be given to the contract, or whether it was intended by all parties to be substituted by a contract entered into between Higby and wife and Hudgins of date May 16, 1913. The contract of May 5th is loosely written, as will be noted by the quotation set out above, and probably in reducing the contract to writing a printed form was used, the wording of which was not adapted to express the term of agreement of the parties without considerable change, which was not made.

On May 16th Higby and wife entered into a contract with Hudgins to do the work and construct the improvements hereinabove mentioned by the execution on the part of Higby and wife of a promissory note in the sum of $4,000, payable to Hudgins on or before 60 days after date, etc. In this instrument, Higby and wife gave to Hudgins a mechanic's, materialman's, laborer's, and contractor's lien

---

⬯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

on the land and premises described, and it was further provided that in case the note given to Hudgins should be taken up and extended by any person, said extension note might be secured by a deed of trust given by Higby and wife. It was further provided that any reasonable alterations and additions to the building might be made at the instance of Higby and wife, and that the contract price agreed upon should be augmented or diminished as in the judgment of Higby and wife might be proper in the premises. On the same day, Hudgins transferred, assigned, and conveyed the various liens created in the contract above mentioned, and the mechanic's lien note, to Thomas Barbuzza. On May 16th, also, Higby and wife executed to L. J. Laneri, trustee, a deed of trust to secure to Thomas Barbuzza, beneficiary payments of a note for $4,000, payable four years after date, the same being in extension of the note given to Hudgins and by him transferred to Barbuzza. On May 24th, Higby and wife conveyed to Dr. Roundtree the premises described in the deed of trust and mechanic's lien contract, above mentioned, for a recited consideration of $11,784.20, as follows: $900 in cash, the assumption of the $4,000 note payable to Barbuzza, and the execution and delivery of 77 vendor's lien notes to cover the balance of the purchase price. Shortly thereafter, the Higbys left Ft. Worth for Arizona, and Dr. Roundtree and family moved into the house and occupied the premises thereafter as a homestead.

Hudgins proceeded to carry out his building contract, and in September, 1913, he had received from Barbuzza, for the benefit of Higby, payments aggregating $2,700, leaving only $450 balance on the $3,150 contract still due. Dr. Roundtree was insisting on the completion of the work, and Hudgins, out of funds, was unable to pay labor and material bills further. Barbuzza declined to pay out the remaining $450 until the building was completed or some assurance was given that it would be completed according to contract. Higby wrote Barbuzza to withhold the payment of the balance due until he should receive a receipt from Hudgins acknowledging payment in full. At least a great preponderance of the testimony shows that at this juncture Hudgins, Roundtree, and Barbuzza had a conference, at which Roundtree agreed if Barbuzza would pay to him $410 of the $450 still due ($40 being retained to pay attorney's fees and other items of expense) that he, Roundtree, would see that the work was completed, and pay all labor and material bills thereafter incurred; that Hudgins agreed to this plan, and executed his receipt in full to Higby, and gave an order on Barbuzza to pay Roundtree said amount. Whereupon Barbuzza did pay to Roundtree the $410, and under the latter's direction the work was completed. Roundtree testified that it cost him more than $500 to complete

the work provided for under the contract between the Higbys and Hudgins.

On September 9, 1913, Hudgins issued an order to Barbuzza to pay Leeper-Curd Lumber Company $288, due for material furnished "for the construction of the addition to the Roundtree sanitarium." This order was presented to Barbuzza at his residence on September 10, 1913. L. B. Curd, of the lumber company, testified that Barbuzza stated to him that at that time he had $450 of the original contract price, and that he would hold the amount of this order out of said $450. Barbuzza testified that he refused to pay the order because he had to pay the balance due to Higby; that he believed he did tell Curd that he could not pay him any money until he got an order from Higby. On October 27, 1913, Hudgins gave to appellant Gurley an order on Dr. Roundtree for $125 for balance due on plastering. Roundtree did not pay said amount, but wrote a memorandum to the effect that, "As soon as loan can be collected or matter adjusted I will use my influence in every way to protect this account." When the order was presented to Barbuzza, he stated that he could not pay out any more money until a final settlement was made. On September 29, 1913, Barbuzza paid a check to Higby for $350, and to the Moncrief Furnace Company, $200, and on November 2, 1913, to Dr. W. C. Roundtree, $410.

On February 10, 1914, Leeper-Curd Lumber Company filed suit in the county court of Tarrant county, on its order and assignment, against Hudgins, Barbuzza, and Roundtree. On August 6, 1916, Barbuzza filed suit in the district court to foreclose his mechanic's and deed of trust liens. April 26, 1915, Roundtree filed a suit in the district court against Leeper-Curd Lumber Company. Gurley and a number of others, claiming laborer's, mechanic's and materialman's liens, intervened. The consolidated cause was tried on September, 27, 1917, and on an instructed verdict a judgment was rendered for Barbuzza, awarding him judgment for his debt and foreclosing his mechanic's lien, against defendant Higby and Roundtree, and judgment against the other defendants as to their cross-actions. Judgment was also rendered in favor of Barbuzza, Higby, and Hudgins.

Judgment was also rendered against Hudgins in favor of Leeper-Curd Lumber Company and J. M. Gurley, and others not necessary here to mention, for the amount of their claims. From this judgment, Gurley, Leeper-Curd Lumber Company, and Hudgins have appealed.

The record in this case is quite voluminous; the transcript consisting of some 142 pages and the statement of facts of 238 pages. There are three appellants and three appellees, and we have expended considerable time and effort in an endeavor to reach a clear understanding of the issues involved.

Our labors have been somewhat increased by many inaccuracies, some of them doubtless typographical, in the transcript, statement of facts, and briefs. In our earnest desire to get at the merits of the case within a reasonable length of time, we requested the counsel for the appellants and the appellees to rebrief the case. With this request, the attorneys have cheerfully complied, for which they have the thanks of the court.

We will first consider the appeal of W. O. Hudgins, and determine whether or not the trial court committed error in giving a peremptory instruction against him, denying him judgment against Higby, Roundtree, and Barbuzza, and denying a contractor's lien on the premises involved. Hudgins pleaded that the contract price agreed upon between him and Higby was $3,150. He further alleged that he had assigned to Barbuzza all of his claim and title to the mechanic's lien secured by said contract, "or so much of said lien as said Barbuzza should pay this defendant for in payment for said improvements, to the extent of $3,150, but including no lien for any additional cost of changes, deviations, or extras in connection with this defendant's performance of his part of said contract." He further alleged in a general way that he had, at the special instance and request of Higby or Roundtree, alleging that Roundtree had been authorized by Higby to act for him in the premises, made certain changes, additions, and deviations from the original contract of the reasonable value of $597.45. He further alleged that there was still due him $450 under the original contract. He denied that he had authorized Barbuzza to pay to Roundtree $450 or any other sum for any advancements Roundtree had made, or was to make, towards the completion of the building.

The testimony upon this issue probably cannot be said to be uncontradicted. Barbuzza testified that he paid the $410 to Dr. Roundtree on an order from Hudgins, but that the order had been lost or he had misplaced it; that said order recited that the work was finished, and that said amount would pay Hudgins in full; that upon the presentation of this order from Hudgins he, Barbuzza, gave a check to Dr. Roundtree for $410, receiving a receipt in full from Hudgins. Roundtree testified that Hudgins agreed that if he would go ahead and furnish the money to pay the laborers, carpenters, etc., that he, Hudgins, would give to Barbuzza an order for final settlement; that witness agreed to this, provided Hudgins would go to work on the job himself; that is, put in time as a carpenter; that Roundtree took the matter up with Higby, and he agreed to the plan, and that thereafter he paid Hudgins small amounts, from $2.50 to $7.50 at a time, and paid all the other bills; that he got an order from Higby to Barbuzza, and also one from Hudgins to Barbuzza, and

that he and Hudgins and a Mr. James, who had been working on the job, met Barbuzza at the corner of Eight and Main streets in the city of Ft. Worth; that on receiving the check for $410 from Barbuzza, he went to the bank and cashed it, and paid James $130 due him for labor; that he did not pay any bills prior to this agreement with Hudgins, but did do so subsequently. James testified, corroborating, substantially, Barbuzza and Roundtree. Hudgins testified on the contrary, that he had no recollection of meeting with Roundtree and Barbuzza at the corner of Eight and Main streets and giving them a written receipt or order for the payment to Roundtree of any balance in Barbuzza's hands, under the original contract; that he did give an order, at an entirely different place, for what he thought was the difference between the $3,150 specified in his contract with Higby and the $4,000 evidenced by the notes; that he did not remember to whom he gave the order, but that it was his understanding that the order was to Barbuzza; that he never did intend the $450 or any part of it was to go to Dr. Roundtree for his expenses for extras, and that he never did give his consent to the appropriation for such purpose. He further testified that he had not made any effort to collect the $450 from Roundtree, and had not notified Higby that he was claiming the same. He later testified that he would not say positively that on a certain night, the day before the alleged meeting at Eight and Main streets, he had not met with Dr. Roundtree, Mr. James, and Miss Macloud at the doctor's office and figured up their accounts, as Roundtree and James had testified, and that at said meeting he agreed that he owed Dr. Roundtree more than $450, and that the latter might go to Barbuzza and get that amount. He further testified that he would not say that he did or did not meet Barbuzza, Roundtree, and James at the time and place mentioned.

[1] But while we are probably not justified in concluding that the trial court was warranted in holding that, as a matter of law, the evidence showed that Hudgins authorized the payment by Barbuzza to Roundtree of the $450, yet we think the uncontradicted evidence does show that the money thus received by Roundtree was used and applied to the payment of labor and material bills necessary to the completion of the contract which Hudgins had undertaken. Though the money might have been paid to Roundtree without the order or authority of Hudgins, yet if, in fact, it was used in the completion of the contract which Hudgins had obligated himself to perform, and which he must have performed in order to show himself entitled to this balance due, he is in no position to demand further payments from Higby, Roundtree, or Barbuzza. Hence we conclude that no injury is shown by appellant by reason of the peremptory instruc-

tion so far as it affected Hudgins' right to recover the $450 claimed to be due under the original contract. In order to sustain his right to recover this amount, he would be required to show that he had performed his contract, which contract included the payment of all bills for labor and material, and this quantum of proof would not be satisfied if the evidence disclosed that more than the amount of funds appellant claimed to be still owing him had been furnished and expended by Roundtree in the completion of the contract.

[2] As to Hudgins' claim for extras in the sum of $597.45, it was incumbent upon him to show, not only that he had performed services, furnished material, and done work outside of and in addition to the specifications agreed upon, but that such additions and alterations necessitated an expense in excess of the contract price. This, we think, appellant Hudgins failed to show. He testified at some length about the extras furnished and additional work done, his testimony upon this feature covering some 20 pages of the statement of facts, but after reading his entire testimony with care, and portions of it several times, we have reached the conclusion that said testimony fails to disclose facts upon which the jury could have properly based a verdict in Hudgins' favor. For instance, he testified in one place that there was owing to him for extras $300, and in another place that the amount was $212.45. He further testified that from this amount there should be deducted certain items that Roundtree had paid for, and that he did not think these items paid for by Roundtree would amount to more than $125 to $150. That he would also have to give Roundtree credit for $50 paid on witness' note. He further testified that he did not know whether the work as done would cost more or be of a greater value than the work provided for under the contract; that is to say, whether the changes and alterations made resulted in an increased or decreased cost. He testified:

"There is no man living can get at what counsel wants, the difference between the cost of the building as originally designed and the cost of the building as constructed in the item of the change of the roof. In order to get what it would have cost to build that part of it according to the original agreement I would have had to go back and make another bill, showing the difference between the cost of the extras in the balance of the building and the original."

It would be impracticable to quote appellant's testimony at length, but we have concluded that the trial court did not err in holding that Hudgins had not discharged the burden of proof resting upon him to establish his right to recover for extras. Hence all assignments in appellant Hudgins' brief are overruled, and the judgment as to him is affirmed.

[3] The claim of appellant Leeper–Curd Lumber Company is that an order from a contractor to an owner in favor of the materialman for the price of material used in the construction of a building for the owner operates as an assignment, whether the same is accepted by the owner or not, and takes precedence over other claims and liens accruing after the date of the assignment. It is contended that the evidence shows, or at least presents the issue, that Barbuzza was the duly authorized agent of Higby to pay out the money due and becoming due under the contract, and that the presentation of the order from the contractor and in favor of the Lumber Company to Barbuzza was, in effect, a presentation to Higby. In support of its proposition, appellant cites: Beilharz v. Illingsworth, 62 Tex. Civ. App. 647, 132 S. W. 106; Fielder Lumber Co. v. Smith, 151 S. W. 605; King v. Hardin Lumber Co., 187 S. W. 401; School District v. Oil City Iron Works, 180 S. W. 1121, and other cases.

In the well-known Beilharz Case, the contractor drew written orders on the owner in favor of a materialman in payment of material, and such orders were accepted by the owner, and the court held that an equitable assignment of so much of the fund due the contractor was affected in favor of the materialman, and the said assignment was superior to any claim or lien of other materialmen of which subsequent notice was given to the owner. King v. Hardin Lumber Co., supra, holds that an equitable assignment of funds in the hands of the owner and due the contractor will be made by the issuance of an order by the contractor on the owner, even though the order is not accepted. But the holdings in these and similar cases recognize the statutory rule laid down in article 5623, V. S. Civ. Stats., to the effect "that in no case shall the owner be compelled to pay a greater sum for or on account of labor performed or material, machinery, * * * than the price or sum stipulated in the original contract between such owner and the original contractor or builder," etc. While it has been held that where under the building contract a specified sum was due the contractor at any certain stage in the construction work, and the statute governing the fixing of the materialman's or laborer's lien has been duly complied with prior to the payment of such installment, the materialman or laborer will have a lien against the building or other construction for which material was furnished, or upon which labor was expended to the amount established to be due (First National Bank v. Lyon-Gray Lumber Co., 194 S. W. 1146, and cases there cited), yet we fail to find evidence that, at the time either of the appellants Leeper–Curd Lumber Company or Gurley gave notice to Barbuzza or Roundtree, claimed by appellants to be acting as Higby's agents for the purpose of receiving such notice, any installment was due Hudgins, the contractor, for work done. Neither the con-

tract of May 16th, to which Higby and wife and Hudgins were parties, nor the one of May 5th, to which Higby, Hudgins, and Dr. Roundtree were parties, provided for installment payments upon the partial completion of the building, and the testimony of the witnesses fails to show that any installment was due at any time upon which either of appellants' liens would attach.

[4] We have given the consideration of this case much time and labor. Since the verdict for appellees was rendered upon peremptory instruction, we have most carefully examined the record, in order to determine if there was any evidence of a probative nature requiring the submission to the jury of the claims of appellants. That the lumber company furnished the material, and that Gurley furnished material and labor for which they were not paid in full, is evident. If they complied with the statutory requirements to fix their respective liens, they should not only have judgment against Hudgins for said amount, which was given them, but should have a lien against the premises to secure the payments thereof. But irrespective of whether Leeper-Curd Lumber Company or Gurley complied with said statutory requirements, and irrespective of the question as to whether they would have a constitutional lien in the absence of a strict compliance with the provisions of the statutes, upon which questions the parties hereto differ, and which questions we do not find it necessary to decide, yet we are constrained to hold that the evidence is insufficient to raise an issuable controversy as to whether at any time there were any funds in the hands of Higby or Barbuzza to which any liens held by appellants would attach. The burden was upon these two claimants to establish, not only the verity of their claims, but the existence of the liens. The latter they failed to do.

The judgment of the trial court is in all respects affirmed.