94  433
94  745
94   433
102  195
6102 729

94   433
110  172

## Ꞧichmond.

### CHESAPEAKE CLASSIFIED BUILDING ASSOCIATION *v.* COLEMAN & OTHERS.

March 25, 1897.

EQUITABLE ASSIGNMENT—*What constitutes—Case at bar.*—In order to constitute a valid assignment in equity, all that is necessary is an order from the person to whom the money is due or coming, on the person in whose hands or under whose control it may be, to pay it to the payee. In the case at bar there was such order, of which the drawee had notice, and having thereafter paid the money to the drawer of the order, the drawee is liable to the payee for the amount thereof.

Appeal from a decree of the Circuit Court of Norfolk county, pronounced May 13, 1895, in a suit in chancery wherein the appellees were the complainants, and the appellant and others were the defendants.

*Affirmed.*

The opinion states the case.

*Walke & Old* and *G. G. Martin*, for the appellant.

*L. B. Allen*, *C. W. Sams* and *C. W. Coleman*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

The bill filed in this case by the appellees, Coleman & Sams, trustees, against the appellants, the Ches. Classified Building Association, Geo. T. Tilley and John W. Jones, stated a case which, if sustained by proof, entitled the plaintiffs to the equitable relief asked, and the trustees of the African M. E.

Church were not necessary parties to the suit. The demurrer to the bill was therefore properly overruled.

It seems well settled that, in order to constitute a valid assignment in equity, all that is necessary is an order from the person to whom the money is due or coming, on the person in whose hands or under whose control it may be, to pay it to the payee. *Brooks* v. *Hatch*, 6 Leigh. 541; *S. V. R. R. Co.* v. *Miller*, 80 Va. 821; *Switzer* v. *Noffsinger & als.*, 82 Va. 518; Pomeroy's Eq., sec. 373; and Story's Eq. Jur., secs. 1043, 1044 and 1047.

It was said by Brokenbrough, J., in *Brooks* v. *Hatch*, *supra*: "It appears from many authorities, that one may draw on the credit of a fund which is not in existence, but which will arise at a future day, and that such draft is an equitable assignment of that fund, and constitutes a lien on it in the hands of him who may have the possession of it."

The facts and circumstances out of which the case at bar arose are these: The African M. E. Church of Berkley, Va., was indebted to John W. Jones, a general contractor, in the sum of $4,525, for materials furnished and the erection of its church edifice in Berkley, and desired to obtain from the Building Association a loan with which to pay Jones, but as the charter and by-laws of the Building Association provided that it could make loans only to white persons who were members of the Association (that is, subscribers to its stock), an arrangement was made between the trustees of the church, Geo. T. Tilley, Secretary of the Building Association, and John W. Jones, whereby Tilley was to subscribe to the necessary amount of the stock of the Association to obtain the loan of $4,000, and the church trustees were to secure the loan by a trust deed upon its church property. This arrangement was carried out, the church trustees executing, August 12, 1893, the trust deed under authority conferred by a decree of the Circuit Court of Norfolk county, to secure the Building Association the payment of the loan of $4,000 to Geo. T. Tilley

as Trustee.   But before the Association would accept this security and agree to make the loan, Jones, as general contractor, was required to release his right to docket a mechanic's lien upon the church property, and to obtain a like release from sub-contractors who had furnished materials, or did work in the construction of the church building; whereupon Jones released his right to docket a mechanic's lien on the property, and made settlement with the church trustees, in which he gave them credit for the $4,000, to come to him from the loan to be made by the Building Association, and took a deed of trust on the church property to Geo. T. Tilley, trustee, subsequent and subordinate to the deed securing the Asociation, to secure the balance of $525 due him (Jones). William J. Ballance and Benson Jones, doing business under the firm name of Ballance & Jones, had a claim as sub-contractors against John W. Jones, the general contractor, for labor employed and materials furnished in the construction of the church, amounting to $1,339.53, for which amount Ballance gave Benson Jones an order on John W. Jones, which the latter accepted, to be paid out of the money due him for building the church, and subsequently Benson Jones and Ballance made a general assignment of their property and assets to Coleman and Sams (appellees), in trust to secure their creditors, which assignment embraced the accepted order for $1,339.53, then held by Benson Jones on John W. Jones. At a meeting of the board of directors of the Building Association in August, 1893, at which meeting John W. Jones, who was in no way connected with the Association, was present, the board directed $3,000 of the $4,000 to be paid, but before payment of the amount a release of Ballance & Jones' right to docket a mechanic's lien on the church property was required by the Association, which release was made in writing by Coleman for himself and Sams, his co-trustee, in the office of the Association, in the presence of Tilley and John W. Jones, upon his receiving $800 of the $3,000 then paid over

to John W. Jones, and assurance made by Geo. T. Tilley,
Secretary of the Association, and John W. Jones, that the
money would be furnished by the Association to pay the bal-
ance of the claim held by Coleman and Sams, trustees, within
sixty days, out of the remaining $1,000 of the $4,000 loan.
October 20, 1893, John W. Jones gave to Coleman and Sams,
trustees, the following order:

> "Berkley, Va., October 20, 1893.
> Chesapeake Classified Building Ass. of Berkley, Sam'l Bland,
>     treas:
>     "Pay to Coleman & Sams, trustees for Ballance & Jones,
> five hundred and thirty-nine 53-100 dollars, and charge same
> to balance due me on A. M. E. Church.
>                    (Signed)        J. W. JONES."

This order was taken by Coleman, after several conversa-
tions with Tilley, the Secretary of the Building Association,
as well as with Jones, in which he was led to believe that the
Association would in a short time pay the $1,000 over to
Jones, and that Jones had a right to give the order on this
fund.   At all events, the Association was informed of the
order by letter from Coleman & Sams, trustees, of the same
date as the order, and the letter was received by the Associ-
ation and read in a meeting of its board of directors, as ad-
mitted by the Secretary, Treasurer, and Attorney of the Asso-
ciation, and on several occasions spoken of both by Coleman
and Sams in personal interviews with officers of the Associa-
tion, who led them to believe that the order would be paid out
of the money to come to John W. Jones, from the loan to the
church; but, after deliberating as admitted by the Treasurer
of the Association, whether to pay it to Coleman & Sams,
trustees, or to John W. Jones, the Association, November 30,
1893, paid $500 of the fund to Geo. T. Tilley, Secretary, who
immediately turned it over to John W. Jones, and the Associ-

ation thereafter refused to make any further payment on the
$4,000 loan for the benefit of the church.

It was contended by the Association that it never agreed to
lend for the benefit of the church any sum beyond the $3,000,
but the fact is, it did pay over to John W. Jones on the loan,
$3,500, and $500 of the amount after notice of the order given
by Jones to Coleman & Sams, trustees. In addition to this
fact, John W. Jones testified as follows: "Q 6. Was there
not an understanding between yourself and the trustees of the
church that this $4,000 was to be paid to you? A. Certainly
there was. That was the reason they applied for the $4,000,
so as to pay me. Q. 7. Did any of the officers of the Asso-
ciation know that this $4,000 was to be paid to you? A. I
suppose they all knew it."

Moreover, there is not the slightest proof in the record that
the trustees of the church laid any claim to this money, or
exercised any control over it, after the settlement with John
W. Jones, in which he gave the trustees credit for the $4,000
on his claim for building the church, and took a second lien
on the church property to secure the balance of $525 due him.
It is true that Tilley, who had acted in this transaction both
for the Building Association and trustees of the church, a most
reluctant and evasive witness, on cross-examination, says:
"I went to the trustees of the church with the check, and
as they instructed me to pay it to Mr. Jones, I immediately
did so," yet, in the same breath, he had said that he delivered
this check to Jones "as soon as Mr. Bland (the treasurer) had
signed it—probably about 10 o'clock," and does not say that
he ever mentioned to these trustees the order given by Jones
to Coleman & Sams, trustees.

Upon this state of facts, abundantly shown by the evidence,
the court below held that John W. Jones, as general con-
tractor, had a right to receive the amounts loaned by the
Building Association to be used by the A. M. E. Church to
pay for the erection of its church building, and that the Build-

ing Association had notice of such right of Jones to receive these amounts; that by the order dated October 20, 1893, Jones assigned his right to receive $539.53 of the amounts, to the complainants, of which assignment the Building Association and Geo. T. Tilley had notice; that this order operated as an equitable assignment of such fund, and that by the joint act of the defendants $500 of the fund was, on the 30th of November, 1893, paid to Jones, in violation of the rights of complainants; and the decree was that the complainants recover and have execution against the defendants, John W. Jones, Geo. T. Tilley, and the Ches. Classified Building Association for the sum of five hundred dollars, with interest thereon from the 30th day of November, 1893, until paid, and their costs; and that they further recover and have execution against the defendant, John W. Jones, for the sum of $39.53, with interest thereon from November 30, 1893, till paid.

We are of opinion that the decree is without error, and it is therefore affirmed.

*Affirmed.*