YOUNGBERG v. EL PASO BRICK COMPANY et al.

(Court of Civil Appeals of Texas. El Paso. April 3, 1913.)

1. ASSIGNMENTS (§ 50*) — FUNDS DUE' ON CONTRACT—ACCEPTANCE.

A writing by a contractor: "This will authorize you to pay to E. the amount of their account to be deducted from any moneys due me on that job"—was a sufficient equitable assignment of a fund partly then existing and to arise in the future as the work on the job progressed, and no acceptance was necessary to make the one to whom the order was addressed liable, if he paid the money to a subsequent assignee.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 99–105; Dec. Dig. § 50.*]

2. ASSIGNMENTS (§ 85*)—FUND—ORDER OF PAYMENT.

Where a contractor assigns parts of funds due or to become due him, the assignees are entitled to be paid in the order of the dates of such assignments.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 149–151; Dec. Dig. § 85.*]

3. ASSIGNMENTS (§ 52*) — PRIORITIES — EVIDENCE.

An agreement by a contractor that a note given by him should be paid out of the next week's estimate on a job he had was not an assignment of his claim.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 107–111; Dec. Dig. § 52.*]

4. BANKS AND BANKING (§ 118*)—INDEMNITY—AGENCY—PLEADING AND PROOF.

In order to bind a bank by an agreement to indemnify made by an attorney of the bank and the cashier, it must be alleged and proved that they had authority.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 118.*]

5. ATTORNEY AND CLIENT (§ 101*)—AUTHORITY—RELEASE OF JUDGMENT RIGHT.

An attorney has no authority to abandon and release the very right and interest which he has secured to his client by judgment by agreeing that his client will indemnify the judgment debtor on condition that he satisfy the judgment.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 209–216; Dec. Dig. § 101.*]

6. PLEADING (§ 36*)—ADMISSIONS—CONCLUSIVENESS.

Where a defendant, sued on a claim assigned by a contractor, alleges that the contractor failed to complete the contract, but that he took over the work and finished it and had $874.89 of the contract price left over, and that such amount had been paid to prior assignees of claims of the contractor, and such alleged prior assignments were held not good, he cannot then contend that he owes nothing on the ground that the contractor had breached his contract and that nothing was due him, because he admitted his liability subject to such assignments.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 81–86; Dec. Dig. § 36.*]

Appeal from District Court, El Paso County; Frank G. Morris, Special Judge.

Action by the El Paso Brick Company against C. M. Youngberg and others. From a judgment for plaintiff and other defendants against C. M. Youngberg alone, he appeals. Affirmed.

Ballard Coldwell and S. P. Weisiger, both of El Paso, for appellant. McBroom & Scott, Davis & Goggin, and Gillett, Hudspeth & Dale, all of El Paso, for appellees.

HARPER, C. J. This suit was instituted by the El Paso Brick Company, a corporation, against A. J. Rose and C. M.

Youngberg and the First National Bank of Pecos, Tex. Plaintiff alleged that it had sold to defendant Rose the brick for the construction of a school building at the town of Pecos, and that on June 23, 1911, there remained due and unpaid the sum of $1,723.87; that Rose on or about June 23, 1911, gave to plaintiff an assignment of the said amount in the hands of the said Youngberg; made the First National Bank of Pecos, Tex., a party because it was claiming an interest in the fund. A. J. Rose made default. Youngberg answered by general denial, and especially denied that he was indebted to the said Rose in any sum whatsoever at the time the assignment was made. He alleged that he had a contract with the said Rose, whereby he was to build a part of the Pecos school building for the sum of $6,760, and that he paid the said Rose $5,103.90, which was in full for all the work completed; that Rose abandoned his contract, and that he (Youngberg) was compelled to complete the work at a cost of $871.21, which left in his hands $874.89 which sum he was liable to pay Rose or such person as he might designate; that on June 30, 1911, he was served by a writ of garnishment, and a judgment was entered against him in favor of the First National Bank of Pecos for the sum of $674.90, which he paid; that said bank had an assignment of $300 of the money Youngberg might owe Rose, which was made prior to the assignment of the El Paso Brick Company or the Pruett Lumber Company; and further pleaded that the First National Bank of Pecos, Tex., knew that the Brick Company was setting up a claim to the balance that he might have after completing said building, and by parol agreement bound itself to indemnify and hold him harmless from the claims of the Brick Company under their assignment from Rose; that after completing the building he had on hand $930.83, less the amount paid the bank of Pecos, $674.90; that the Pruett Lumber Company of Pecos sets up a claim to the money and material left over, to wit, $267.-37 and has brought suit therefor in county court of this county; that Otis Reid claims $125.84 of the fund, and has brought suit, and has his writ of garnishment from the justice court of this county; that the Zimmer Hardware & Implement Company of Pecos claims $123.30 of the fund, and has filed suit in the justice court of El Paso county; that the El Paso Brick Company claims $1,723.87, as shown by its petition herein; that the said Rose failed and refused to complete the work under his contract, and that by reason of his failure became liable to pay this defendant $5 per day after June 1, 1911, for each day that the work should remain incomplete; that said work remained incomplete 35 days after it should have been completed, for

which he became liable to this defendant in the sum of $175; that he (Younberg) was compelled to and did finish the said work; that of the $255.93 and two pieces of steel now in his hands he claims $175, and tenders into court $80.93, and prays citation for all the parties named; and further prays that, if the plaintiff El Paso Brick Company shall recover judgment against him for more than the $255.93 and the value of two pieces of steel, then he asks judgment over against the First National Bank of Pecos, Tex., for the excess so recovered under the aforesaid contract of indemnity.

The Pruett Lumber Company, Zimmer Hardware Company, and Otis Reid answered that they have judgments in courts of competent jurisdiction and valid writs of garnishment for the sums by each respectively claimed. And the Pruett Lumber Company further pleads that on June 23, 1911, the said A. J. Rose, in consideration of the indebtedness due it by writing, duly signed, addressed to C. M. Youngberg, assigned the amount of its claim in the hands of the said Youngberg, The defendant First National Bank of Pecos filed plea of special privilege to be sued in the county of its residence, to wit, Reeves county, and further answered that it had an assignment from said Rose for the sum of $500 of the funds in the hands of the said Youngberg; that it took judgment for said sum against defendant Youngberg as garnishee, and same had been paid, therefore it has no claim against any fund due by said Youngberg to the said Rose; pleaded general denial, and that it was entitled to the funds so collected by it under the judgment because of the fact that Rose assigned the said sums by oral agreement in the hands of Youngberg, and that it is entitled to said moneys by reason of priority of assignment; and further pleaded that, if any agreement to indemnify Youngberg was made, it was without authority to bind the bank.

The defendant Youngberg granted a jury, court instructed a verdict, and defendant Youngberg appeals.

[1] The first assignment of error is as follows: "The court erred in overruling defendant C. M. Youngberg's general demurrer to plaintiff El Paso Brick Company's petition, because said petition based plaintiff's cause of action on a purported assignment in words and figures substantially as follows: 'Mr. C. M. Youngberg. This will authorize you to pay to the El Paso Brick Company the amount of their account, as shown by the above account, being for the brick furnished for the Pecos job, and to be deducted from any moneys due me on that job. [Signed] A. J. Rose.' This writing was at the bottom of a statement of account of the El Paso Brick Company against A. J. Rose for $1,723.87, whereas in

law and in fact said writing is not an order or assignment, but a mere permission or authority to pay, and as alleged in plaintiff's petition defendant C. M. Youngberg did not accept the same or act under it."

Statement under first assignment of error: "The purported order or assignment given the El Paso Brick Company, contained nothing mandatory or unequivocal; it merely authorized Mr. Youngberg to pay $1,723.87 to the El Paso Brick Company out of money due Youngberg. And Mr. Youngberg, as shown by the pleading of the El Paso Brick Company, did not accept or act under this authority." The proposition urged by defendant Youngberg is that the writing charged to be an assignment of the "moneys due" is a mere permission or authority to pay, and was not mandatory, and therefore created no obligation. The defendant Youngberg contracted to construct a certain school building in the town of Pecos, Reeves county, Tex., and the defendant A. J. Rosé was a subcontractor under Youngberg, and as such purchased brick from the plaintiff Brick Company, and for which at the time this cause was tried he owed a balance of $1,723.87. Rose did not finish the work he contracted to do, but by subsequent agreement turned it over to Youngberg to be finished. During the time that he, Rose, was working, pursuant to his contract, he gave to the El Paso Brick Company the writing copied in the above assignment of error, which appellant contends is not an absolute transfer of the moneys due and to become due; and in his fourth and sixth assignments of error contends that it was not an assignment of money to become due, but, if anything, only an assignment of such as was due at the date of the writing, and therefore imposed the burden on Youngberg of ascertaining the amount intended to be assigned. Under Beaumont Lumber Company v. Moore, 41 S. W. 180, this order was given with reference to a particular fund, partly then existing, and to arise in the future as the work on the building progressed, and was the subject-matter of equitable assignment; and it is not necessary that the assignment be accepted. The last quotation from Beaumont Lumber Company v. Moore, supra, disposes of the fifth assignment of error. Harris County v. Campbell, 68 Tex. 22, 3 S. W. 243, 2 Am. St. Rep. 467.

[2] In addition to the above assignment, it is undisputed that Rose gave one to the Pruett Lumber Company for $104.87. These contained an express transfer of so much of the fund as was required to pay them, respectively, and they became the owners of the orders at the date thereof of the respective debts so assigned, and were entitled to be paid therefrom in order of the respective dates at which their rights were respectively fixed. The equitable rule applies that the first in time is the first in right.

[3] Appellant's second assignment complains of this peremptory charge because the pleading and evidence raised a question of an assignment to the First National Bank of Pecos which should have been an offset against the amount to be recovered by the Brick Company. We see no error in this respect, for the reason that there is no evidence in the record that there had been an oral assignment from Rose to the bank. The whole of the testimony relied upon by appellant to establish an oral assignment for the bank is as follows, to wit: Rose testified: "That $300 note was to be paid out of the estimate which Mr. Falvey was to give me, and I so told Mr. Beauchamp. I had agreed with Mr. Beauchamp at the time I borrowed the money on the first note that I was to pay it out of the first money coming to me the following week." Mr. Beauchamp testified: "I took the note for the loan. I never had any agreement or understanding with Mr. Rose than that this note was to be paid out of that estimate. I would not have made the note without some agreement of that sort or some security." If there was any evidence upon the question of oral assignment, it is within the meaning of above; and, at best, this evidence only establishes a promise to pay, when the architect made the next estimate, the amount of the loan at that time made. No words were used which would constitute an assignment of any sum, or any definite fund; nothing that would bind Youngberg or Falvey to pay the note of the bank upon presentation. What is said above disposes of the third assignment.

The third assignment of error is as follows: "The court erred in peremptorily instructing the jury to find for the El Paso Brick Company for $650.91, and the Pruett Lumber Company for $104.87, because there was evidence to show that previous to the purported assignments held by plaintiff and the Pruett Lumber Company Rose had assigned $500 of the money sued for by plaintiff, and the Pruett Lumber Company, to the first National Bank of Pecos, and the issue as to which of these assignments was prior should have been submitted to the jury." Having determined that the evidence adduced does not constitute an assignment to the bank, as the plaintiff is not complaining that the court gave the Pruett Lumber Company judgment, the defendant Youngberg, having admitted the assignment to the Lumber Company, cannot complain.

[4] Appellant's seventh assignment charges that the court erred in not submitting to the jury the issue as to whether the First National Bank of Pecos had agreed to indemnify Youngberg to the extent of the amount of its judgment, $557.26. If the pleadings are sufficient to raise the question, the evidence is such that there could have been no other verdict rendered, even had the question been submitted to the jury. In order for the bank

to be bound in such cases, it must be pleaded and proven that the parties who made the agreement as agents of the bank were authorized to make the agreement. There is no evidence that either Parker, the attorney for the bank, or Beauchamp, its cashier, had express authority to bind the bank, and they as a matter of law have no implied authority. Cullin-McCurdy v. Vulcan Iron Works, 93 Ark. 342, 124 S. W. 1023.

[5] It is apparent that Youngberg alleged one agreement and undertook to prove an entirely different one. It would also appear from the testimony of Brady that if any agreement was made with either the attorney Parker, or Beauchamp, the cashier, that such agreement was made after the judgment had been procured in the garnishment suit by the bank against Youngberg, and that the agreement made, if made, by Parker, was in consideration of a promise on Youngberg's part not to enjoin the execution of the judgment in garnishment, but to perform the judgment, as he was legally required to do. In other words, Parker is represented as having in effect agreed that a valid and binding judgment which he had just obtained for his client against Youngberg should be ineffective in so far as Youngberg was concerned, and that Youngberg should be entirely indemnified from its consequences. An attorney has no authority to abandon and release the very right and interest which he has secured to his client by the judgment taken. It can hardly be contended with any degree of plausibility that the testimony of Mr. Brady shows any agreement with Beauchamp, cashier of the bank, for the indemnification of his client Youngberg, which could be enforced. His testimony is that he understood Mr. Beauchamp to agree "that the First National Bank of Pecos would employ counsel and fight the said cause to the end, and protect Mr. Youngberg from any loss on account of the money in said garnishment proceeding in the county court." It does not appear, except by way of inference, from the testimony whether this understanding between Mr. Brady and Mr. Beauchamp was had before or after the judgment was entered in the garnishment proceeding. It would seem that it was afterwards. However this may be, there was no authority residing in Beauchamp, the cashier, to enter into a contract of indemnity, and the understanding testified to by Brady is not the contract pleaded, nor does it appear that this contract, if any such was ever made, has been breached.

[6] The eighth assignment is as follows: "The court erred in instructing the jury to find for the El Paso Brick Company for $650.91 and the Pruett Lumber Company for $104.87, or either of them for any sum whatever, as the assignments on which both companies based their claims were drawn on the fund become due Rose on his contract with Youngberg for building a part of the Pecos high school building, whereas the evidence shows conclusively that Rose did not complete his part of said Pecos high school building under said contract, and no sum became due Rose at the time or after such purported assignments under said contracts, and said orders did not and could not be made to apply to any sum coming to Rose under said subsequent contract of July 6, 1911." The defendant Youngberg pleaded as follows: " * * * That Rose was to furnish certain material and perform certain work as subcontractor and failed and refused so to do. * * * That thereupon defendant Youngberg agreed with Rose * * * to complete the work. * * * That * * * he did finish the work. * * * That he had on hand after paying the expense of the completion * * * the sum of $874.89," and defendant Youngberg testified that the said sum was the balance due Rose, after paying for labor and material. Under the above pleading and evidence, he admitted his liability for the said amount, subject to the orders, which were valid assignments of any portion of it.

We therefore find that the court did not err in instructing a verdict.

There being no error apparent upon the record, the judgment of the lower court is affirmed.

McKENZIE, J., not sitting.