[Civil No. 3379.   Filed July 9, 1934.]

[34 Pac. (2d) 397.]

GUSSIE ALLEN, Appellant, v. HAMMAN LUM-
BER COMPANY, a Corporation, Appellee.

Mr. Isaac Barth and Mr. Wm. P. Lutfy, for Appellant.

Mr. W. T. Sprowls and Messrs. McFarland & Fulbright, for Appellee.

LOCKWOOD, J.—Some time prior to September, 1930, one J. W. Barker bought lumber and building material from the Hamman Lumber Company, a corporation, hereinafter called plaintiff, for the erection of a certain house. When the building was completed Barker sold the property to one Tribolett, and, in order to pay various bills outstanding against it, a first mortgage was placed upon it in favor of Mary I. McKie, as mortgagee. Tribolett gave a second mortgage to Barker for part of the purchase price of the premises, and in consideration of plaintiff signing a waiver of its materialman's lien Barker executed the following document:

"Escrow Instructions

"Phoenix, Arizona, 9/5, 1930.

"The Coggins Title, Insurance and Trust Co.,

"Please pay Hamman Lumber Company $590.00 @ 8% @ $20.00 per mo. from funds received on Tribolett-Barker 2nd mtg.

"[Signed]  J. W. BARKER."

All the papers in the transaction, including the order of payment above quoted, were placed in escrow with the Coggins Title Insurance & Trust Company, and all the moneys due under the second mortgage were payable through it. Thereafter the trust company paid to plaintiff installments from the proceeds of the second mortgage, amounting to the sum of $160. On the 6th day of July, 1931, Barker executed an assignment of the second mortgage to his brother, and placed the assignment in escrow, with instructions that it be delivered to the latter

after the total amount due plaintiff, in accordance with the terms of the order above set forth, had been paid from the proceeds of such mortgage. Thereafter the building upon the premises was destroyed by fire. It was insured in the name of Tribolett, as owner, with the usual rider in favor of McKie and Barker, as mortgagees, as their interests appeared. The insurance company made a settlement of the loss, and by agreement of the two mortgagees the check was sent to McKie. The amount of the insurance was sufficient to pay off the McKie mortgage and to leave in her hands the sum of $517.97, which was due Barker by reason of the fact that he was the second mortgagee named in the insurance policy.

Thereafter, and on the 15th day of April, 1932, Barker assigned to Gussie Allen, hereinafter called intervener, all his interest in the said sum of $517.97, the proceeds of the insurance remaining in the hands of McKie; the consideration for such assignment being the release of an alleged indebtedness from Barker to Allen. Shortly thereafter McKie was served with a writ of garnishment issued at the instance of plaintiff in a suit brought by it against Barker for the amount still due on its account, and she answered setting up that she held the $517.97 as Barker's share of the proceeds of the insurance policy, but that she had been served with a copy of his assignment to Allen before she was served with the writ of garnishment, and she paid the money into court to abide such judgment as might be rendered. Barker defaulted, but Allen filed a complaint in intervention, setting up her assignment and the circumstances thereof, and plaintiff answered, claiming that Barker held the proceeds of the insurance policy, as aforesaid, as a trustee for its benefit, and that the Allen assignment was fraudulent. The issues pre-

sented by the pleadings were tried to the court, and judgment was rendered in favor of plaintiff in accordance with the prayer of its complaint, and the money on deposit with the court, less a reasonable garnishee's fee, was ordered paid to it. This appeal was then taken by Allen against that part of the judgment ordering the money paid to plaintiff.

It is the theory of plaintiff upon this appeal that the order made by Barker in its favor was an equitable assignment *pro tanto* of the second mortgage, and that such assignment carried with it Barker's interest in the proceeds of the insurance policy herein referred to. It is the position of intervener that the order above set forth was not an assignment of the second mortgage, and that, even if it was, such assignment did not carry with it Barker's interest in the insurance policy.

We consider first the effect of the order in question. The general rule of law is that the true test of an equitable assignment is whether the debtor would be justified in paying the debt to the person claiming to be the assignee, and that an assignment may be by parol or in writing, or partly in writing and partly oral. Any language, however informal, which shows an intention of an owner of a chose in action to transfer it so that it will be the property of the transferee will amount to an equitable assignment if sustained by a sufficient consideration. In 5 C. J. 927, it is said:

"An order drawn on a debtor, payable out of a debt or fund in or coming into his hands, will operate as an assignment of either the whole or part of such debt or fund, depending on whether the order is for the whole or for a part thereof, if the order is accepted by the drawee. . . . "

There are many cases when orders very similar to the one in question are held to be assignments.

*Curtis* v. *Walpole Tire & Rubber Co.,* (C. C. A.) 218 Fed. 145; *Title Insurance & Trust Co.* v. *Williamson,* 18 Cal. App. 324, 123 Pac. 245, 247; *Youngberg* v. *El Paso Brick Co.,* (Tex. Civ. App.) 155 S. W. 715; *Watson* v. *Brunner,* 128 Va. 600, 105 S. E. 97; *Brill* v. *Tuttle,* 81 N. Y. 454, 37 Am. Rep. 515; *Mack Mfg. Co.* v. *William A. Smoot & Co.,* 102 Va. 724, 47 S. E. 859; *Chesapeake Classified Bldg. Assn.* v. *Coleman,* 94 Va. 433, 26 S. E. 843.

In the present case, not only did Barker give the order in question to the title company, to whom the money was paid on the second mortgage by Tribolett, but part of such money was actually paid in pursuance of the order, and when Barker at a later time formally assigned the second mortgage he expressly made such assignment subject to the full payment of the order in favor of plaintiff. We are of the opinion that this shows clearly it was the intention of Barker to make an equitable assignment of sufficient of the proceeds of the Tribolett mortgage to plaintiff to pay its claim against him.

But while the debt secured by the mortgage was unquestionably assigned to plaintiff *pro tanto,* does it necessarily result that the mortgage and insurance policy *ipso facto* followed the debt? So far as the mortgage is concerned, unquestionably it does. 41 C. J. 672; 2 R. C. L. 633. But is this also true of the insurance policy? It is of course the general rule, supported by a wealth of authority, that an insurance policy is a personal contract between the insurer and the insured, and not a contract which in any sense runs with the property, so that one who has a lien on the insured property has no claim *ipso facto* to the insurance money realized by the insured in the event of the loss of the property. *Place* v. *Norwich,* 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134.

We have held very recently in the case of *Brogoitti* v. *Walter et al.*, 43 Ariz. 290, 30 Pac. (2d) 835, that the law is as above stated, and that conveyance of the insured property by an owner in whose name the insurance stands does not carry with it the insurance policy unless it is assigned to the purchaser by the original owner with the consent of the insurer. Were this action by plaintiff against the insurance company to recover the proceeds of the policy, on the theory of an equitable assignment thereof, it might well be that the insurance company could successfully resist payment on the ground that it had not consented to an assignment thereof to plaintiff. But such are not the facts in this case. The insurance company recognized the validity of the policy, so far as the mortgagees named therein are concerned, and has paid its proceeds to them. So far as we know, there are no cases precisely in point. But we think the general principles of equity require that it be held that under circumstances like those appearing herein the assignment of the debt carries with it the proceeds of the insurance policy. The reason for the rule that an insurance policy does not enure to the benefit of a lienholder is that the insurer is entitled to choose not only the physical but the moral risk he assumes, and that he cannot therefore be made liable, without his consent, to a stranger to his contract. But, as was said in the Brogoitti case, *supra,* if the insurer, the insured, and the assignee all agree thereto, the policy may be transferred. In this case the insured and the assignee, by their acts, have assented as a matter of law to the transfer of the debt and all security therefor. The interest of Barker in the policy was obviously one of security for his debt, and that only. The insurer by paying the insurance has impliedly recognized the policy as still covering the

Barker mortgage, notwithstanding its assignment. Under these circumstances we think Barker cannot now equitably deny that the proceeds of the policy, so far as he is concerned, when paid by the insurer, were held by him as an equitable trustee for the benefit of the plaintiff, and therefore he had no interest therein which he could assign to Allen on April 15, 1932; nor can the right of Allen be greater than that of her assignor. The judgment of the superior court of Maricopa county is affirmed.

ROSS, C. J., and McALISTER, J., concur.