NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

SYNERGY LOGISTICS CO LLC, et al., *Plaintiffs/Appellees/Cross-Appellants*,

*v.*

GURDEEP SINGH, et al., *Defendants/Appellants/Cross-Appellees*.

No. 1 CA-CV 20-0286
FILED 4-27-2021

Appeal from the Superior Court in Maricopa County
No. CV2015-013235
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Robert A. Royal, Jack R. Vrablik
*Counsel for Plaintiffs/Appellees/Cross-Appellants*

Conner Law, PLC, Phoenix
By Catherine Conner
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

Baumann, Doyle, Paytas & Bernstein, P.L.L.C., Phoenix
By Gary T. Doyle
*Co-Counsel for Defendants/Appellants/Cross-Appellees*

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

**W I N T H R O P**, Judge:

¶1 Appellants Gurdeep "Tony" Singh, Raj Singh, Super Logistics, LLC ("Super Logistics"), and Mangat Group, Inc. ("Mangat") (collectively, "Appellants") challenge the superior court's denial of their motions for judgment as a matter of law and for a new trial following a jury verdict for Byron Lee and Synergy Logistics Co., LLC ("Synergy") (collectively, "Appellees") for intentional interference with a non-compete agreement executed by a former Synergy employee, Lisa Boshears. Appellees cross-appeal the court's ruling denying their application for attorneys' fees. For the following reasons, we affirm as to all issues raised.

## FACTS AND PROCEDURAL HISTORY

¶2 BLS&F, LC ("BLS&F"), operated by Lee, served as a freight broker with Super Logistics between 2012 and 2014. Tony Singh ("Singh") is the principal of Super Logistics and Mangat. Lee and Singh orally agreed that (1) BLS&F and Super Logistics would split net revenues 75/25 for each brokered load, and (2) Super Logistics would not "touch" or get into business with any of Lee's customers.

¶3 After BLS&F began working with Super Logistics, BLS&F hired Lisa Boshears, who had previously worked for Lee through a different company. BLS&F also hired Lisa's son, Justin Boshears. On November 25 and 26, 2013, Lisa and Justin each executed a "Employee Non Disclose/Non Compete Agreement" (the "Non-Competes") in which they agreed not to "engage directly or indirectly[] in the brokering of motor carrier services in competition with Employer (or any of its successors or assigns)" for two years after termination of employment. In the blank space

for "Employer," Justin wrote "BLS&F" and Lisa wrote "BLS&F – Super Logistic."[1]

¶4 In late 2013, BLS&F shut down and all of its assets were rolled over into another company owned by Lee: Synergy Logistics Co., LLC. According to Lee, Synergy had previously been "rolled into" BLS&F but was "later switched back[] to Synergy," with both companies "conduct[ing] the same operations" but operating "under different names for a time period due to financial reasons." In January 2014, Synergy began operating as an independent agent of Super Logistics.

¶5 The Synergy/Super Logistics business relationship deteriorated shortly after it began, and Lisa and Justin left Synergy to join Super Logistics in February 2014. On February 10, 2014, Lee sent a letter on Super Logistics letterhead notifying customers that Lisa and Justin were "no longer affiliated with Super Logistics" and that they had "agreed to and signed Non Compete/Non Disclosure agreements with Super Logistics through . . . BLS & F, LC/Synergy Logistics Company[,] their employer." Shortly thereafter, the following memo, written by Lisa and signed by Singh, was sent to some Super Logistics customers and carriers:

> Lisa Boshears as well as her son Justin Boshears are now an independent agent of Super logistics unaffiliated with Byron Lee's agency. They are both located at the corporate office at 9299 w olive in Peoria, AZ. All clauses on the no compete document you all have been receiving from Byron lee is null and void as Lisa and Justin are still an Agency of super logistics. With this being said please feel [free] to contact the owner (Gurdeep Singh) with any question or concerns for future business doing's with Super logistics.

¶6 Lee learned from a customer that Lisa and Justin had joined Super Logistics despite their signed Non-Competes. Lee met with Singh on multiple occasions to try to resolve the issue. They dispute the content of those meetings; according to Lee, Singh offered to pay him $500,000 to "let it go" regarding Lisa and Justin's hire, which Lee declined. Lee further contends he later accepted Singh's offer of the same $500,000 payment in addition to a job offer with Super Logistics that would pay approximately

---

[1] Lee testified he signed Lisa's Non-Compete before she filled out her portion of the form, and he confirmed he was not aware Lisa had unilaterally added "Super Logistic" on the "Employer" line until much later, after she was no longer working for him.

$98,000 per year. Singh acknowledged hiring Lee but denied ever offering $500,000. According to Lee, Singh later refused to make the $500,000 payment.

¶7        Appellees sued in 2015, alleging in part that Appellants had (1) breached the "agreements . . . pertaining to the protection of employee and customer relationships," (2) breached the 2014 agreement to pay $500,000 and retain Lee for "as long as he wanted to remain employed," and (3) "induced the Boshears to breach their agreements and leave Synergy to start work for [Super Logistics]." Appellants denied liability and asserted a counterclaim based on a $50,000 promissory note executed by Lee.

¶8        The superior court granted summary judgment on several of Appellees' claims not at issue in this appeal, leaving Appellees with three claims: (1) breach of contract as to the alleged $500,000 payment; (2) unjust enrichment; and (3) intentional interference with business expectations. Those claims proceeded to a jury trial, where the jury awarded Appellees $500,000 on the breach of contract claim and awarded Appellants $22,167 on their counterclaim.

¶9        Appellants moved for a new trial. The court granted the motion, finding that the jury's verdict as to the $500,000 payment was contrary to the weight of the evidence, but the court allowed the judgment on the counterclaim to stand.

¶10       At the second jury trial, the parties again litigated Appellees' three claims from the first trial as well as an additional claim that Appellants had breached the parties' 2012 oral agreement by hiring Lisa and Justin. At the close of Appellees' case-in-chief, Appellants moved for judgment as a matter of law on all claims. The court denied Appellants' motion, except that it again limited the breach of contract claim on the 2014 agreement to cover only the alleged $500,000 payment and not the purported job offer. The jury returned a defense verdict on both of Appellees' breach of contract claims, but it awarded Appellees $495,000 on the intentional interference claim, which resulted in a $468,067.10 net judgment in Appellees' favor.

¶11       Appellees requested their attorneys' fees and costs under Arizona Revised Statutes ("A.R.S.") section 12-341.01(A), contending they should be deemed the successful party because Appellants had previously rejected Appellees' written settlement offer for $450,000, and the net verdict was greater than that offer. Appellants also requested attorneys' fees and

costs, contending they "defeated two contract claims, prevailed on a contract counterclaim, and [were] the prevailing parties in this litigation using either the 'percentage of success factor' or 'totality of the litigation rubric[.]'" The court denied both applications, finding Appellees' intentional interference claim was a tort claim not eligible for an award of attorneys' fees and that, on balance, Appellants were not the prevailing party. In reaching the latter finding, the court expressly noted Appellees' prior settlement offer, stating that "[n]ot only will [Appellants] have to pay a substantial judgment, but the final judgment will be greater than the $450,000 settlement offer [Appellees] made before the first trial."

**¶12** Appellants renewed their motion for judgment as a matter of law pursuant to Arizona Rule of Civil Procedure 50(b) and alternatively moved for a new trial, arguing Appellees had failed to prove multiple elements of their intentional interference claim. The court denied the motion, finding there was sufficient evidence to support the verdict. Appellants filed a timely notice of appeal challenging the denial of the motion and the underlying judgment. Appellees filed a timely cross-appeal. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) and (A)(5)(a).

## ANALYSIS

**¶13** We review *de novo* the denial of a motion for judgment as a matter of law ("JMOL"). *ABCDW LLC v. Banning*, 241 Ariz. 427, 433, ¶ 16 (App. 2016). A motion for JMOL should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 578, ¶ 25 (App. 2015). We view the evidence in the light most favorable to upholding the jury's verdict and will affirm if any substantial evidence exists that would allow a reasonable person to reach that result. *Id.* We do not weigh the credibility of witnesses nor resolve conflicts of evidence and reasonable inferences drawn therefrom; instead, we must give full credence to the jury's right to resolve these matters. *Dupray v. JAI Dining Servs. (Phoenix), Inc.*, 245 Ariz. 578, 582, ¶ 11 (App. 2018).

**¶14** We review for an abuse of discretion the denial of a motion for a new trial on the ground that the verdict was against the weight of the evidence. *Spring v. Bradford*, 243 Ariz. 167, 170, ¶ 11 (2017); *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007). "[W]e give great deference to the jury's factual findings." *Larsen v. Decker*, 196 Ariz. 239, 244, ¶ 27 (App.

2000). We do the same in reviewing the verdict itself. *See S Dev. Co. v. Pima Cap. Mgmt. Co.*, 201 Ariz. 10, 13, ¶ 3 (App. 2001).

  I.  *There Is Sufficient Record Evidence to Support a Finding That BLS&F Assigned Its Non-Compete Rights to Synergy.*

**¶15**  As noted above, the Non-Competes prohibited Lisa and Justin from "engag[ing] directly or indirectly[] in the brokering of motor carrier services in competition with Employer (or any of its successors or assigns)" for two years following termination of employment. Appellants contend "there was nothing in the record on which to conclude that [Synergy] had the right to seek to enforce the Non-Compete Contract . . . by assignment," but acknowledge Lee's testimony that Synergy did have such a right. Essentially, Appellants contend documentary proof was needed to establish that BLS&F assigned the Non-Competes to Synergy.

**¶16**  We have previously held that an employee consents to an equitable assignment of his or her non-compete agreement if, as is the case here, the agreement expressly includes the employer's successors and assigns. *Supplies for Indus., Inc. v. Christensen*, 135 Ariz. 107, 109 (App. 1983). "[T]he intent of the parties governs whether an equitable assignment has been made. Such intent can, of course, be established both by word and deed." *Morton v. Rogers*, 20 Ariz. App. 581, 586 (1973); *see also Allen v. Hamman Lumber Co.*, 44 Ariz. 145, 148 (1934) (explaining an equitable assignment "may be by parol or in writing, or partly in writing and partly oral"). Moreover, an equitable assignment can be based on "any language which shows an intention of an owner of a chose in action to transfer it so that it will be the property of the transferee . . . if sustained by a sufficient consideration." *Webster v. USLife Title Co.*, 123 Ariz. 130, 134 (App. 1979).

**¶17**  Appellants rely on *Certified Collectors, Inc. v. Lesnick*, 116 Ariz. 601 (1977). There, our supreme court deemed a written assignment inadequate because it lacked "crucial information," including who signed the form and whether that person was affiliated with the purported assignor. *Id.* at 603. The court found "no additional facts in the record which would even suggest an answer to the lack of information in this . . . form 'assignment.'" *Id.* Such is not the case here, as Lee presented undisputed testimony that BLS&F transferred all of its assets to Synergy in the latter part of 2013, including its customer base, Lee's personal services, physical equipment, and the Non-Competes. He further testified that the Non-Competes were valuable assets of BLS&F. He also testified that BLS&F and Synergy were essentially "one and the same" and that Super Logistics had approved the change from BLS&F to Synergy. Further, Singh

testified that he knew Lee had shut down BLS&F and was operating as Synergy in 2014. The jury could reasonably conclude from this evidence that BLS&F equitably assigned the Non-Competes to Synergy.

## II. The Court Did Not Err By Letting the Intentional Interference Claim Go to the Jury.

**¶18** Appellants next contend Appellees failed to establish their intentional interference claim. A plaintiff alleging intentional interference with a contract must prove:

(1) existence of a valid contractual relationship,

(2) knowledge of the relationship on the part of the interferor,

(3) intentional interference inducing or causing a breach,

(4) resultant damage to the party whose relationship has been disrupted, and

(5) that the defendant acted improperly.

*Safeway Ins. Co., Inc. v. Guerrero*, 210 Ariz. 5, 10, ¶ 14 (2005). Appellants challenge the sufficiency of the evidence as to all five elements but challenge each element on essentially the same grounds.

### A. Existence of a Valid Contractual Relationship

**¶19** Appellants first reiterate their contention that BLS&F did not assign its rights under the Non-Competes to Synergy. We reject that contention for the reasons set forth above. *See supra* ¶¶ 15-17.

**¶20** Appellants also contend Super Logistics cannot be liable for intentionally interfering with Lisa's Non-Compete because Super Logistics was a party to the contract. *See, e.g.*, *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 63, ¶¶ 56-59 (App. 1998). Although Lisa wrote in "BLS&F – Super Logistic" as the "Employer" on her Non-Compete, Super Logistics did not sign the contract. Appellants presented no other evidence to suggest Super Logistics agreed to Lisa's Non-Compete, as Singh instead testified that he did not even see the Non-Compete until after this litigation began.

**¶21** Alternatively, Appellants contend Super Logistics was an intended third-party beneficiary of Lisa's Non-Compete. But the intention to benefit a third person must be indicated in the contract itself. *Basurto v.*

*Utah Constr. & Min. Co.*, 15 Ariz. App. 35, 39 (1971). "A third party intended beneficiary is found where recognition of the right to performance in the beneficiary is appropriate to effectuate the intention of the parties, and the circumstances indicate that the promisee intended to give the beneficiary the benefit of the promised performance." *Christensen*, 135 Ariz. at 109 (quoting Restatement (Second) of Contracts § 302 (1982)). Lisa's unilateral inclusion of "Super Logistic" as an "Employer" does not by itself suggest the parties intended to give Super Logistics the benefit of the Non-Competes. Indeed, Lee testified that Lisa added "Super Logistic" on the form without his knowledge or consent, and Singh testified he was not even aware of the Non-Competes until after he had hired Lisa and Justin.

### B. *Knowledge of Lisa's Non-Compete*

¶22 Appellants next contend they did not know of Lisa's Non-Compete before she joined Super Logistics. This argument incorrectly presumes that the only alleged act of interference was Super Logistics' decision to hire Lisa.

¶23 There is ample evidence showing Appellants learned of the Non-Compete shortly after hiring Lisa and subsequently interfered with it. Singh testified that Lisa told him about the Non-Compete when she first moved into her Super Logistics office, but he admitted he did not contact Lee to discuss the Non-Compete even after learning of it. Soon after, Singh approved and signed the memo Lisa wrote that declared the Non-Compete was "null and void," even though Singh had not actually obtained or reviewed the Non-Compete. *See* Restatement (Second) of Torts § 766 cmt. i (1979) (stating that a defendant may be subject to liability for intentional interference "even though he . . . believes that the agreement is not legally binding"). Singh also testified that Lisa told him the Non-Compete did not apply because Lee had fired her, a statement Singh apparently accepted at face value. In addition, Singh confirmed that he intended to have Lisa continue to operate as an agent for Super Logistics even after learning of the Non-Compete.

¶24 Given this testimony and the business relationship between Synergy and Super Logistics at that time, the jury could reasonably infer Appellants were aware of Lisa's Non-Compete. The jury also could have discounted Singh's testimony that he did not learn of the Non-Compete before hiring her. *See Walsh v. Advanced Cardiac Specialists Chartered*, 229 Ariz. 193, 197, ¶ 12 (2012) ("[W]e have long recognized that a jury may appropriately discredit a witness's uncontradicted testimony for various reasons, including the witness's personal interest in the case.").

### C. Intentional Interference Inducing or Causing Breach

**¶25**        Appellants next contend there was no evidence to show their interference was intentional, again relying on Singh's testimony that he did not know about the Non-Compete before hiring Lisa. Intent is shown by proving that the defendant either intended a particular result or knew that a particular result was substantially certain to be produced by its conduct. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 494, ¶ 77 (2002). The issue of intent normally presents a question of fact. *See Neonatology Assocs., Ltd. v. Phoenix Perinatal Assocs. Inc.*, 216 Ariz. 185, 188, ¶ 9 (App. 2007).

**¶26**        As noted above, Singh signed the memo declaring that Lisa's Non-Compete was "null and void," despite the fact that he had not actually seen the Non-Compete. He also admitted he did not instruct Lisa to not contact Synergy customers after learning of her Non-Compete, testifying that who his agents contacted was "their choice." As such, the jury could reasonably conclude Appellants intended to interfere with Lisa's Non-Compete and Appellees' business expectations.

### D. Resultant Damages

**¶27**        Appellants next contend Appellees did not present "clear evidence" of their damages, citing *Grummel v. Hollenstein*, 90 Ariz. 356, 359 (1962). *Grummel* is not an intentional interference case; rather, the court there applied contract principles to money damages awarded in lieu of specific performance. *Id.* at 360.

**¶28**        Appellants also contend Appellees did not prove their damages with "reasonable certainty," citing *Gilmore v. Cohen*, 95 Ariz. 34, 36 (1963). The "reasonable certainty" requirement generally applies to breach of contract cases in which the plaintiff claims future lost profits. *See id.* at 35-36; *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 183-84 (App. 1984). Appellees presented evidence that Lisa took all but two of Synergy's customers to Super Logistics. They also presented evidence showing that Super Logistics paid BLS&F/Synergy approximately $295,000 in revenues in 2012, approximately $321,000 in revenues in 2013, and $185,753.61 in revenues in 2014. And while Singh denied offering $500,000 to compensate for Appellees' financial losses, the jury was free to credit Lee's testimony that Singh did make such an offer on two occasions. *See Zuluaga ex rel. Zuluaga v. Bashas', Inc.*, 242 Ariz. 205, 212, ¶ 21 (App. 2017) ("It is the jury's burden alone to weigh the credibility of witnesses and draw

inferences from the evidence presented at trial."). Accordingly, there is reasonable evidence in the record to support the jury's $495,000 award.

**¶29**         Appellants also contend Appellees failed to mitigate their damages. A failure to mitigate may negate or reduce damages where a party has voluntarily and unreasonably exposed itself to damage or increased its injury. *Hull v. DaimlerChrysler Corp.*, 209 Ariz. 256, 259, ¶ 14 (App. 2004). Whether a plaintiff failed to mitigate damages is typically "a question of fact for the trier of fact." *Fairway Builders, Inc. v. Malouf Towers Rental Co., Inc.*, 124 Ariz. 242, 256 (App. 1979). It was Appellants' burden to prove mitigation was reasonably feasible but not reasonably attempted. *Id.* at 255.

**¶30**         Appellants contend Singh testified "without contradiction" that Lee did not object to Super Logistics hiring Lisa nor did Lee alert Singh to the Non-Compete. But Lee testified he immediately called Singh to object upon learning from a customer that Lisa had joined Super Logistics. It was the jury's role to resolve this conflict in the parties' testimony. *See Correa v. Pecos Valley Dev. Corp.*, 126 Ariz. 601, 607 (App. 1980) ("It is the function of the jury to weigh conflicting evidence and inferences and to determine the credibility of witnesses."). Indeed, the jury was free to discredit Singh's testimony even if it was uncontroverted. *See Walsh*, 229 Ariz. at 197, ¶ 12.

**¶31**         Appellants also cite Singh's testimony that he instructed Lisa to not pursue Synergy customers after he learned of the Non-Compete. But Singh also testified that he had no idea who Lisa contacted and that he "didn't tell her nothing" about who to contact. Appellants also contend Lee prepared, but did not send, a demand letter concerning the improper interference with his clients. But Lee testified that he chose not to send the letter because he believed the parties "were moving forward towards resolving . . . the problem" and he "didn't want to threaten [Singh] with legal action and . . . end what looked like it could be a good resolution and immediately push it into the courts." We will not disturb the jury's apparent conclusion that Appellees reasonably attempted to mitigate their damages. *See Fairway Builders*, 124 Ariz. at 256 ("[W]hether the injured party violated his duty to mitigate damages is a question of fact for the trier of fact, when there is conflicting evidence on the question.").

### E.   Improper Conduct

**¶32**         Appellants also broadly contend they cannot be liable for intentional interference because their actions were not improper. To be actionable, the interference must be both intentional and improper.

*Neonatology Assocs.*, 216 Ariz. at 187, ¶ 8. We consider seven factors in determining whether particular actions were improper:

> (a) the nature of the actor's conduct,
>
> (b) the actor's motive,
>
> (c) the interests of the other with which the actor's conduct interferes,
>
> (d) the interests sought to be advanced by the actor,
>
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
>
> (f) the proximity or remoteness of the actor's conduct to the interference and
>
> (g) the relations between the parties.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 387 (1985). We may resolve this issue as a matter of law only if there is no reasonable inference to the contrary in the record. *Neonatology Assocs.*, 216 Ariz. at 188, ¶ 9.

**¶33** Appellants repeatedly cite Singh's testimony that Lee did not object to Singh hiring Lisa, arguing that it applies to nearly all of the *Wagenseller* factors. As discussed above, there is conflicting testimony about this issue, as Lee testified he did not know where Lisa was employed immediately after she left Synergy or that she had joined Super Logistics. Lee also testified that he did not discuss Lisa's departure with Singh because Singh "typically didn't want to be bothered with these kinds of things," preferring that agents like Synergy "take care of [their] own business." On this record, the jury could have reasonably credited Lee's testimony on this issue. *See, e.g.*, *Belliard v. Becker*, 216 Ariz. 356, 359, ¶ 19 (App. 2007) (concluding that it was "within the jury's province" to accept the testimony of certain witnesses over others).

**¶34** Appellants also contend that the interest Appellees sought to protect—a restrictive covenant—is disfavored and strictly construed against the employer. *See, e.g.*, *Hilb, Rogal & Hamilton Co. of Ariz. v. McKinney*, 190 Ariz. 213, 216 (App. 1997). They specifically contend Lisa's Non-Compete is unenforceable "because there are serious concerns whether [Synergy was] even a party to the Non-Compete Contract." We have previously addressed that issue. *See supra* ¶¶ 15-17.

¶35　　　　Appellants also largely repeat their failure to mitigate arguments, contending Lee's decisions not to send the demand letter or otherwise "demand[] that Lisa be fired" broke the causal chain between Lisa's hiring and Appellees' damages. Again, Lee testified that he chose not to send the demand letter because he felt the parties were close to resolving their dispute. Moreover, there is no evidence to suggest Singh would have fired Lisa had Lee demanded it. On the contrary, Singh admitted he signed the memo stating Lisa's Non-Compete was "null and void" without actually reviewing the Non-Compete.

     III.　　*The Court Did Not Err In Denying Appellees' Application for Attorneys' Fees.*

¶36　　　　In their cross-appeal, Appellees challenge the court's denial of their application for attorneys' fees, contending they were the successful party under the "settlement comparison" test of A.R.S. § 12-341.01(A):

> If a written settlement offer is rejected and the judgment finally obtained is equal to or more favorable to the offeror than an offer made in writing to settle any contested action arising out of a contract, the offeror is deemed to be the successful party from the date of the offer and the court may award the successful party reasonable attorney fees.

We have previously said that this sentence "seemingly narrows the trial court's discretion in handling fee determination issues in contract cases" by deeming an offeror to be the successful party from the date of the written settlement offer forward if the offer is "for an amount equal to or greater than the final judgment." *Hall v. Read Dev., Inc.*, 229 Ariz. 277, 279, ¶ 9 (App. 2012).

¶37　　　　Appellees contend the court erred by not considering the "settlement comparison" test under the circumstances of this case. But it appears the court did consider it, as it found that Appellants "never made a settlement offer that would have been more favorable . . . than the final judgment." It also appears the court determined Appellees, on balance, to be the successful party, as it awarded them costs and jury fees. The court denied Appellees' fee claim for two reasons: (1) "attorneys' fees are not recoverable for torts," and (2) Appellees "unduly expanded" the claim by bringing "a ten count complaint and prevail[ing] on only one tort claim." We need only consider the first reason, as we have previously held that a party cannot recover attorneys' fees under A.R.S. § 12-341.01(A) when the party only prevails on a tort claim. *See Ramsey Air Meds, L.L.C. v. Cutter*

*Aviation, Inc.*, 198 Ariz. 10, 13, ¶ 17 (App. 2000) ("A tort claim does not come within the attorneys' fee statute by being interwoven with an *unsuccessful* contract claim." (emphasis in original)).

**¶38** Appellees contend the "settlement comparison" test can apply when the successful party only prevails on a tort claim, citing *Summers v. Gloor*, 239 Ariz. 222, 228, ¶¶ 21-23 (App. 2016). The successful party in *Summers* prevailed on a claim for unjust enrichment, which is not a tort claim. *Id.* at 223-25, ¶¶ 1-2, 7. An unjust enrichment claim may arise out of contract for the purposes of A.R.S. § 12-341.01(A) if the claim would not exist but for a contract; however, we did not address that issue in *Summers*. *See id.* at 228, ¶¶ 21-23; *Schwab Sales, Inc. v. GN Constr. Co., Inc.*, 196 Ariz. 33, 37, ¶ 11 (App. 1998). Furthermore, Appellees cite no authority suggesting an intentional interference claim can arise out of contract under any circumstances. *See Bar J Bar Cattle Co., Inc. v. Pace*, 158 Ariz. 481, 486 (App. 1988) ("The duty not to interfere with the contract of another arises out of law, not contract.").

**¶39** In any event, the court retains broad discretion to award all, some, or none of the claimed fees in cases where the "settlement comparison" test applies. *Hall*, 229 Ariz. at 279-80, ¶ 9. Here, the court found that "both sides had significant wins and significant losses," as Appellants "prevailed on the $22,167 counterclaim and defeated the vast majority of [Appellees'] claims" and Appellees "will receive a net judgment in their favor of over $450,000." The court, therefore, did not abuse its discretion in denying the parties' competing fee claims. *Id.*; *see also Uyleman v. D.S. Rentco*, 194 Ariz. 300, 305, ¶ 27 (App. 1999) (explaining we will affirm the denial of attorneys' fees under A.R.S. § 12-341.01(A) "if it has any reasonable basis").

### IV. Attorneys' Fees on Appeal

**¶40** Both sides request their attorneys' fees incurred in this appeal pursuant to A.R.S. § 12-341.01(A). We deny Appellees' request for the reasons set forth above. *See supra* ¶¶ 36-39. We deny Appellants' request because they are not the successful party in this appeal.

**¶41** Appellants also request for the first time in their reply brief that we direct the superior court to award them their attorneys' fees and costs incurred below. We do not consider issues raised for the first time in a reply brief. *Dawson*, 216 Ariz. at 111, ¶ 91.

## CONCLUSION

¶42      For the foregoing reasons, we affirm.  We award Appellees their taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:   AA